IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Andrea Deal                          :

    Plaintiff                    :

    v.                           : 3:14-CV-1750

Commissioner Michael J. Astrue       : (Judge Richard P. Conaboy)

    Defendant.

---

Memorandum

We consider here the appeal of Plaintiff Andrea Deal ("Plaintiff" or "Deal") from the decision of the Social Security Administration ("SSA") denying her application for Supplemental Security Income Benefits ("SSI").  This issues have been fully briefed by the parties and this case is now ripe for disposition.

I.   **Background.**

   **A.  Procedural Posture.**

On October 14, 2011, the Plaintiff, alleging a disability onset date of October 1, 2011, filed a protective application for SSI with the SSA.  Plaintiff's claims were denied at the administrative level on January 31, 2012 whereupon she filed a written request for a hearing.  The hearing took place on February 5, 2013 in Wilkes Barre, Pennsylvania before Administrative Law Judge Michelle Wolfe ("the ALJ").  In a written decision dated

1

March 28, 2013, the ALJ determined that Plaintiff was not disabled.

Plaintiff timely appealed the ALJ's decision to the Appeals Council on May 23, 2013.  By letter dated July 24, 2013, the Appeals Council approved the ALJ's decision as the final decision of the Commissioner of the SSA.  On September 12, 2014, Plaintiff filed a timely appeal with this Court that contests the propriety of the SSA's final decision.  The Court has jurisdiction of this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(iii).

**B.  Testimony Before the ALJ.**

Plaintiff testified as follows.  She was born on March 25, 1978 and last worked on October 1, 2011.  (R.35).  Her last employment was as a nurse's aide.  (R.36).  She received her certification as a nurse's aide in 1999.  (Id).  She stated that she stands 5'3'' tall and weights approximately 107 pounds.  (R.36-37).  She is right hand dominant.  (R.37).  She holds a driver's license but drives only as needed to make medical appointments or visit her five daughters who currently reside with her former husband.  (R.35-37).

In response to the ALJ's question whether she can provide any kind of work, Plaintiff testified that she has bronchial asthma that impairs her breathing, arthritic knees that have undergone two surgeries, arthritis in both ankles, bilateral carpal tunnel syndrome, and a chipped venicular bone in her right hand.  (R.38-39).  Plaintiff also stated that she was under the care of a

2

psychiatrist.  (R.39).  Her medications include: Xanax, Percoset, and Fioricet.  (R.39-40).  She alluded to swollen lymph nodes in her head which she claims have aggravated recurrent migraine headaches.  (R.40).  She further testified that she takes Percoset to alleviate pain in her back and legs and denied experiencing side effects from her medications.  (Id.).  Plaintiff also testified that she has a TENS unit at home and that, while she uses it every other day for her pain, it does not seem to work.  (R.40-41).

Plaintiff also testified that she tries to walk but can only do so for a short period of time because her legs begin to hurt. (R.41).  She estimated that she could walk for about five minutes and that "the doctors said do not lift over ten pounds."  (Id.). She stated further that both Drs. Jalowiec and Malloy restricted her to lifting no more than ten pounds.  (Id.).

With respect to her physical capacities, Plaintiff stated that she tries to do household chores and she is able to run the vacuum "a little bit".  (R.42).  She stated that she has trouble doing the laundry due to the bending involved and her father helps her with that task.  (Id).  Her cooking is confined to items that can be heated in a microwave oven.  (Id.).  When her children comes to visit her she watches them play video games but cannot play with them outside due to breathing problems for which she uses a Ventolin inhaler.  (R.42-43).  Plaintiff also testified that she was experiencing pain in her left side and radiating down into her

left leg during the hearing.  (R.43).  Under questioning from her attorney, she stated that her pain typically comes on after she has been sitting for approximately 20 minutes and that it intensifies during unspecified weather conditions.  (R.44).  She stated further that she experiences numbness and weakness in both hands as a result of carpal tunnel syndrome for which she was contemplating surgery.  (R.45).  She described experiencing migraine headaches 4-5 times each week that can be so severe that she must lie down and close her eyes to find some relief.  (R.45-46).  Plaintiff also asserts that she experiences difficulty in buttoning her clothing and tying her shoes as a result of her numbness with her fingers and the pain in her back.  (R.47).  She related that tasks she could formerly perform quickly and easily now are difficult for her and require more time.  (R.47-48).  She acknowledged that she tried to return to work in 2011 on a night shift job at which she could stand and sit at will.  (R.48).  She states that she lost that job when she was subjected to a drug screening which revealed the numerous medications in her system.  (R.49).

Also testifying at the hearing before the ALJ was Nadine Henzes, a vocational expert.  Ms. Henzes described the Plaintiff's past relevant work as that of a nurse's aide.  (R.50).  She had several jobs as a nurse's aide and, while all would be classified as semi-skilled, they varied from light to medium to heavy exertional levels.  (R.51-52).  In response to a hypothetical

4

question from the ALJ that asked Ms. Henzes to assume an individual with the same age, education, and work experience as the Plaintiff, who had the residual functional capacity to perform work at the light exertional level subject to limitations including: occasional crawling and climbing but never on ladders, ropes or scaffolds; occasional pushing and pulling with the upper extremities; and the need to avoid temperature extremes of hot and cold and the hazards posed by moving machinery and unprotected heights; Ms. Henzes indicated that such an individual could not perform the Plaintiff's past relevant work.  (R.52).  However, Ms. Henzes stated that given limitations imposed by the ALJ's first hypothetical question, there were other jobs in the national economy that such a person could perform such as information clerk, desk clerk, and office helper. (Id.).

If the additional limitation of "occasional fingering" was added to the hypothetical question, Ms. Henzes concludes that both the desk clerk and office helper jobs would be eliminated from consideration but that the information clerk position could be performed.  (R.53).  Ms. Henzes also stated that even with the additional fingering limitation Plaintiff could also perform such tasks such as hostess or usher.  (Id.).

The ALJ then asked Ms. Henzes to consider that Plaintiff was reduced to a sedentary level of exertion with all the additional limitations posed in the previous hypothetical questions.  (R.53-

5

54).  Ms. Henzes responded that even then jobs existed in the national and regional economies that Plaintiff could perform. (R.54).  These jobs included positions as an appointment clerk, data entry clerk, and video monitor.  (Id).

A final hypothetical question was posed to the vocational expert that asked her to assume a sedentary level of exertional capacity with all previously discussed additional limitations as well as cognitive limitations of simple, routine tasks in a low-stress environment with only occasional decision-making and occasional changes in work setting.  (R.55).  Even with these additional limitations, the vocational expert concluded that Plaintiff would be able to function as a video monitor, a document preparer, or a data entry person.  (R.56-58).

In response to a question from Plaintiff's attorney that asked the vocational expert to assume also that the Plaintiff can sit for only 15-20 minutes at a time, stand for only 5 minutes at a time, and would find it necessary to lie down each day during the workday for at least a half hour and on some days for the entire day, the vocational expert responded that all of the positions she had discussed would be eliminated.  (R.57).

### C.  Medical Evidence.

The record substantiates that Plaintiff has a long time treating relationship with Dr. Michael Jalowiec.  (R.621-49, 674-75, and 679-87).  Dr. Jalowiec's notes indicate that he saw

6

Plaintiff on at least 16 occasions between February of 2011 and February of 2013.  On many more occasions, Plaintiff called to request that Dr. Jalowiec refill various prescriptions for Percoset, Fiorocet, and Xanax.[1]  Dr. Jalowiec's notes do indicate his diagnoses that Plaintiff suffers from osteoarthritis of both knees and chronic back pain.  Dr. Jalowiec's notes do not include any assessment of Plaintiff's functional limitations nor do they allude to any level of disability.

In December of 2011, Plaintiff began seeing M.A. Rahman, M.D., a psychologist, for mental health treatment.  On December 8, 2011, Dr. Rahman authored a Psychiatric Evaluation of the Plaintiff. (R.617-18).  Dr. Rahman indicated that Plaintiff's speech was spontaneous, that she had good eye contact, that she was oriented in all spheres, that her attention and concentration were good, and that her insight and judgment were good.  Dr. Rahman also noted that Plaintiff's mood was anxious.  Dr. Rahman diagnosed major depressive disorder and panic disorder without agoraphobia and prescribed Paxil to be taken in conjunction with the Xanax that had already been prescribed by Dr. Jalowiec.  Dr. Rahman subsequently saw Plaintiff on January 5, 2012, February 2, 2012, and March 29, 2012.  On each of these occasions Dr. Rahman's notes indicate that

---

[1] Fioricet is a combination of acetaminophen, butabutal, and caffeine often prescribed for tension headaches; Percocet is a combination of acetaminophen and oxycodone often prescribed for moderate to severe pain; Xanax (Alprazolam) is used to treat anxiety disorders and depression.  See www.drugs.com.

Plaintiff was friendly and cooperative, oriented, non-psychotic, and that she displayed appropriate affect and reported that the prescribed medications were helpful.  On April 26, 2012, Plaintiff reported that the combination of Paxil and Ambien previously prescribed by Dr. Rahman were effective and had resulted in improved sleep.  (R.729).

On February 29, 2012, Plaintiff was examined by Dr. John T. Rich who found that carpal compression caused "pain more so than numbness."  Dr. Rich found that Plaintiff had "good motion of her digits" and, per Plaintiff's request, injected both her carpal canals with an anesthetic solution.  Dr. Rich's note also indicates his belief that Plaintiff should have a neurological evaluation. (R.666-667).  There is no evidence in the record to indicate that Plaintiff ever had such a neurologic evaluation.

On January 23, 2013, Plaintiff presented for a psychiatric evaluation by Dorothy Dean, LPC, of Wholistic Counseling Services in Scranton, Pennsylvania.[2]  Ms. Dean's evaluation revealed that the Plaintiff "was court-ordered to therapy."  Ms. Dean described Plaintiff as a woman who appears her stated age with good hygiene and eye contact.  She further described Plaintiff as cooperative and noted that she answered questions appropriately and that her thought processes were intact.  Ms. Dean further described

---

[2] Despite Plaintiff's testimony that she had seen Ms. Dean on a weekly basis from October of 2012 through February of 2013, the only document in the record from Ms. Dean relates to the session of January 23, 2013.

8

Plaintiff as future-oriented, without psychotic thought processes, hallucinations or illusions, and possessed of a good memory.  She noted, however, that Plaintiff had poor judgment and impulse control, that her attention span was poor, that she was socially immature, and that she had difficulty staying focused.  Ms. Dean diagnosed that Plaintiff was afflicted by generalized anxiety disorder.  She expressed no opinion regarding the extent of the limitations posed by Plaintiff's generalized anxiety disorder. (R.677-78).

On January 1, 2012, Plaintiff was seen by Vincent Bianca, M.D., for a Bureau of Disability Determination consultative examination.  Dr. Bianca diagnosed Plaintiff with degenerative cervical disc disease and attendant muscle spasm, muscular headaches, possible degenerative lumbar disc disease with painful range of motion, asthma, depressive disorder, and chronic pain syndrome.  (R.653-54).  Dr. Bianca found normal strength in both Plaintiff's arms, near normal (4/5) strength in both Plaintiff's legs, normal reflexes of the upper extremities, no evidence of focalized neurological deficits, no need for any assistive device to aid Plaintiff in walking, and no evidence of decreased grip strength in either hand.  (R.652-57).

On January 30 2012, Dr. Jan Kapcala conducted a review of Plaintiffs's medical records to that date.  Dr. Kapcala noted, inter alia, that no objective findings supported Plaintiff's

complaints of neck and low back pain.  Dr. Kapcala stated that
multiple MRI's of her lumbar spine had been normal and no imaging
of her cervical spine had been done.  Dr. Kapcala observed that
"her asthma is mainly by history, with no evidence she is having
any associated symptoms."  Dr. Kapcala also stated that the
Plaintiff's carpel tunnel syndrome has been treated and was not an
ongoing issue as demonstrated by her grip strength and the fact
that there was no significant loss of dexterity.  Finally, Dr.
Kapcala concluded that, despite the presence of decreased range of
motion of the Plaintiff's cervical spine and related muscle spasms,
Plaintiff had no medically determinable impairments that met a
specific listing in the Social Security regulations.

    **D.  ALJ Decision.**

    The ALJ's decision (Doc. 10-2) was unfavorable to the
Plaintiff.  It included the following findings of fact and
conclusions of law:


    (1)  The claimant has not engaged in substantial gainful
         activity since October 14, 2011, the application
         date.

    (2)  The claimant has the following severe impairments:
         major depressive disorder (MDD), panic disorder, and
         generalized anxiety disorder (GAD).

    (3)  The claimant does not have an impairment or

10

combination of impairments that meets or medically
equals the severity of one of the listed impairments
in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR
416.920(d), 416.925 and 416.926).

(4) After careful consideration of the entire record,
the undersigned finds that the claimant has the
residual functional capacity to perform a full range
of work at all exertional levels but with the
following non-exertional limitations: she cannot
perform complex tasks, but she can do simple routine
tasks in a low stress environment defined as
occasional decision-making and occasional changes in
the work setting.  The claimant can have occasional
interaction with the public, co-workers, and
supervisors.

(5) The claimant in unable to perform any of her past
relevant work.

(6) The claimant was born on March 25, 1978 and was 33
years old, which is defined as a younger individual
age 18-49, on the date the application was filed.

(7) The claimant has at least a high school education
and is able to communicate in English.

(8) Transferability of job skills is not material to the
determination of disability because using the

Medical-Vocational Rules as a framework supports a

finding that the claimant is "not disabled" whether

or not the claimant has transferable job skills.

(9)   Considering the claimant's age, education, work

experience, and residual functional capacity, there

are jobs that exist in significant numbers in the

national economy that the claimant can perform.

(10)  The claimant has not been under a disability, as

defined in the Social Security Act, since October

14, 2011, the date the application was filed.

## II.   Disability Determination Process.

The Commissioner is required to use a five-step analysis to

determine whether a claimant is disabled.[3]  It is necessary for the

Commissioner to ascertain: 1) whether the applicant is engaged in a

substantial activity; 2) whether the applicant is severely

---

[3] "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less that 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).  The Act further provides that an individual is disabled

only if his physical or mental impairment or impairments are of such
severity that he is not only unable to do his previous work but cannot,
considering his age, education, and work experience, engage in any
other kind of substantial gainful work which exists in the national
economy, regardless of whether such work exists in the immediate area
in which he lives, or whether a specific job vacancy exists for him, or
whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work.  20 CFR §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.  *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at the fifth step of the process when the ALJ found there are jobs that exist in the national economy that Plaintiff is able to perform. (R.38-39).

**III. Standard of Review**

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision.  42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence

means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a
> talismanic or self-executing formula for
> adjudication; rather, our decisions make
> clear that determination of the existence *vel*
> *non* of substantial evidence is *not* merely a
> quantitative exercise.  A single piece of
> evidence will not satisfy the substantiality
> test if the Secretary ignores, or fails to
> resolve, a conflict created by countervailing
> evidence.  Nor is evidence substantial if it
> is overwhelmed by other evidence--
> particularly certain types of evidence (e.g.,
> that offered by treating physicians)--or if
> it really constitutes not evidence but mere
> conclusion.  *See Cotter*, 642 F.2d at 706
> ("Substantial evidence" can only be
> considered as supporting evidence in
> relationship to all the other evidence in the

14

record.") (footnote omitted).  The search for

substantial evidence is thus a qualitative

exercise without which our review of social

security disability cases ceases to be merely

deferential and becomes instead a sham.

710 F.2d at 114.

This guidance makes clear that it is necessary for the Secretary to analyze all evidence.  If she has not done so and has not sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."  *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979).  In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper."  *Cotter*, 642 F.2d at 706-07.  However, the ALJ need not undertake an exhaustive discussion of all the evidence.  *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  "There is no requirement

that the ALJ discuss in its opinion every tidbit of evidence
included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d
Cir. 2004). "[W]here [a reviewing court] can determine that there
is substantial evidence supporting the Commissioner's decision, . .
. the *Cotter* doctrine is not implicated." *Hernandez v.
Commissioner of Social Security*, 89 Fed. Appx. 771, 774 (3d Cir.
2004) (not precedential).

A reviewing court may not set aside the Commissioner's final
decision if it is supported by substantial evidence, even if the
court would have reached different factual conclusions. *Hartranft*,
181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d
1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings
of the Commissioner of Social Security as to any fact, if supported
by substantial evidence, shall be conclusive . . .")). "However,
even if the Secretary's factual findings are supported by
substantial evidence, [a court] may review whether the Secretary,
in making his findings, applied the correct legal standards to the
facts presented." Friedberg v. Schweiker, 721 F.2d 445, 447 (3d
Cir. 1983) (internal quotation omitted). Where the ALJ's decision
is explained in sufficient detail to allow meaningful judicial
review and the decision is supported by substantial evidence, a
claimed error may be deemed harmless. See, e.g., Albury v.
Commissioner of Social Security, 116 F. App'x 328, 330 (3d Cir.
2004) (not precedential) (citing Burnett v. Commissioner, 220 F.3d

16

112 (3d Cir. 2000) ("[O]ur primary concern has always been the ability to conduct meaningful judicial review."). An ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. Matthews v. Apfel, 239 F.3d 589, 593 (3d Cir. 2001).

## IV.   Discussion.

### A. General Considerations

At the outset of our review of whether the ALJ has met the substantial evidence standard regarding the matters at issue here, we note the Third Circuit has repeatedly emphasized the special nature of proceedings for disability benefits. See Dobrowolsky, 606 F.2d at 406. Social Security proceedings are not strictly adversarial, but rather the Social Security Administration provides an applicant with assistance to prove his claim. Id. "These proceedings are extremely important to the claimants, who are in real need in most instances and who claim not charity but that which is rightfully due as provided for in Chapter 7, Subchapter II, of the Social Security Act." Hess v. Secretary of Health, Education and Welfare, 497 F. 2d 837, 840 (3d Cir. 1974). As such, the agency must take extra care in developing an administrative record and in explicitly weighing all evidence. Dobrowolsky, 606 F.2d at 406. Further, the court in Dobrowolsky noted "the cases demonstrate that, consistent with the legislative purpose, courts

have mandated that leniency be shown in establishing the claimant's disability, and that the Secretary's responsibility to rebut it be strictly construed."  Id.

### B. Plaintiff's Allegation of Error.

Plaintiff identifies one issue at Page 4 of her Memorandum of Law (Doc. 11).  The Court reads that issue as an amalgam of two issues that are better addressed independently as follows:

### 1. Whether Substantial Evidence Supports the ALJ's Determination that Plaintiff Can Perform Substantial Gainful Activity?

We note initially that it is Plaintiff's burden to demonstrate that her impairments are so severe as to preclude her from engaging in any gainful activity.  42 U.S.C. §§ 423(b)(1)(A), 1382(c)(a)(3)(A).  Additionally, the Plaintiff must show not only that she has a diagnosed impairment or impairments, but also that she has associated functional limitations that prevent her from performing any gainful activity.  Petition of Sullivan, 904 F.2d 826, 845 (3d. Cir. 1990).

Plaintiff has produced credible medical evidence that she has three severe impairments: major depressive disorder, panic disorder, and a generalized anxiety disorder.  The ALJ did note these impairments in her Findings of Fact and Conclusions of Law. (Doc. 10-2, R.17).  Plaintiff has also produced medical evidence that she has degenerative disc disease of her cervical spine,

18

carpel tunnel syndrome and migraine headaches. The ALJ, while noting these conditions, did not find them to be severe. [4] The AlJ found it significant that Plaintiff's treatment for her cervical spine maladies had been confined to ingestion of pain medications and that she had not seen any specialist for a consult regarding potential alleviation of this condition. The ALJ also noted that various MRI and X-ray studies were unremarkable and that a State Agency medical consultant who reviewed Plaintiff's medical records found that her back issues did not constitute a medically determinable impairment. (R.18, Exs. B-3A, B-7F, B-20F, and B-24F).

With respect to Plaintiff's carpal tunnel syndrome, the ALJ noted correctly that there is no objective medical evidence of any loss of motor strength or loss of dexterity in the record. In fact, Dr. Rich's consultative examination showed no such deficits of Plaintiff's hands or wrists. (R.18-19, Ex. B-24F).

With respect to Plaintiff's migraine headaches, the ALJ noted that a CT scan done in June of 2009 showed that Plaintiff had no cranial abnormalities. There is no objective medical evidence in the record to support a diagnosis of migraine headaches. Further, Plaintiff's primary care physician treated claimant's headaches only by continuously dispensing Fioricet. (R.18, Ex. B-24F).

---

[4] The ALJ also rejected Plaintiff's claim that she suffers from asthma because there is no objective evidence of any medical treatment of asthma or even a concrete diagnosis of asthma in the record subsequent to Plaintiff's alleged onset date.

The ALJ considered each of Plaintiff's physical complaints and found none constituted an impairment due to the reasons discussed above.  The Court cannot conclude that the ALJ lacked a reasonable basis for her determination that Plaintiff had no severe physical impairment because her determination is supported by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion - - that is, it comports with the standards set out in Richardson and Cotter, supra.  Ms. Deal's treatment for each of her physical conditions was of a routine and conservative nature and thus undermines her subjective complaints regarding the severity of these symptoms.  Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994).  Moreover, the ALJ's credibility determinations should not be reversed unless inherently incredible or patently unreasonable. See Atlantic Limousine, Inc. V. NLRB, 243 F.3d 711, 718-19 (3d. Cir. 2001).  Were there medical evidence in the records that spoke specifically to the level of impairment that Plaintiff's physical conditions impose, the Court may have concluded otherwise. However, again, mere diagnoses without supporting evidence of disabling impairment cannot support an award of benefits.  Petition of Sullivan, supra.

Plaintiff also argues that the ALJ irrationally subordinated the conclusions of Ms. Dean regarding the limiting effect of Plaintiff's psychological symptoms to those of Dr. Rahman.  (Doc. 11 at 8-9).  The Plaintiff argues that the ALJ in fact substituted

20

her own medical opinion for that of Ms. Dean.  (Id.).  Plaintiff is simply incorrect in this regard.  By finding that Plaintiff had severe psychological limitations in the form of generalized anxiety disorder, panic disorder, and major depressive disorder, the ALJ actually agreed with Ms. Dean's findings in significant measure. The ALJ did not agree that Ms. Dean's GAF assessment (48) was a reliable indicator of the limitations imposed by these conditions.

The ALJ did not, as Plaintiff asserts, substitute her own judgment for a medical opinion of record.  Rather, the ALJ found more reliable a second medical opinion of record, that of Dr. Rahman.  Dr. Rahman also diagnosed Plaintiff as afflicted by major depressive disorder and panic disorder.  Yet, the totality of his treatment records (spanning at least four sessions with the Plaintiff) indicated that she was generally oriented, possessed of good insight and judgment, non-psychotic, friendly, cooperative, and that she displayed appropriate affect.  Dr. Rahman assessed a GAF score of 60 - - a score indicative of only moderate functional limitations.

The Court cannot conclude that the ALJ's decision to find Dr. Rahman's assessment more reliable than that of Ms. Dean may be viewed as irrational. Dr. Rahman's credentials are academically superior to those of Ms. Dean, he saw the Plaintiff more often than she, and his GAF assessment is more consistent with his description

of Plaintiff's demeanor than that of Ms. Dean.[5]  The ALJ may choose which examining source to credit based on his evaluation of the evidence as a whole.  Morales v. Apfel, 225 F.3d 310, 317 (3d. Cir. 2000).  The Court finds that the ALJ did precisely that in this case and that her reasoning is easily supported by the "substantial evidence" standard expressed in Richardson and Cotter, supra.

**2.    Whether the ALJ Erred as a Matter of Law in Determining that Plaintiff's Testimony Regarding her Level of Pain was only Partially Credible?**

Plaintiff's complaints regarding the level, frequency, and intensity of her leg, back, and hand pain were found to be "not entirely credible" by the ALJ.  (Doc. 10-2 at 9; R.23).  The ALJ noted that Plaintiff's treatment for her leg and back pain had been conservative and confined exclusively to the ingestion of various pain relief medications.  The ALJ noted also that in the nearly three years Plaintiff treated with Dr. Jalowiec, she was never referred to a specialist for an evaluation of the objective causes of her leg and back pain and that there is no objective test in the record to substantiate this pain.  (R.20).  Similarly, there is no objective testimony in the record to substantiate the existence, frequency, or intensity of the migraine headaches the Plaintiff

---

[5] Ms. Dean found that Plaintiff was cooperative, fully oriented, answered questions appropriately, was devoid of psychotic symptoms, and that her thought processes were intact.  These findings are somewhat inconsistent with Ms. Dean's conclusion that Plaintiff has severe psychological functional limitations.

claims to suffer and, as with her back and leg pain, Plaintiff's treatment has been confined to use of oral pain medications with no further effort to explore other treatment modalities.  (R.22-23).

The ALJ, as the finder of fact, is accorded wide discretion in making credibility findings.  Van Horn v. Schweiker, 717 F.2d 871 (3d Cir. 1983).  Moreover, the mere fact that Plaintiff has been diagnosed with conditions that can produce the type of pain or symptomology she claims to experience does not automatically result in a finding of disability.  Petition of Sullivan, supra.  See also Jones v. Sullivan, 954 F.2d 125, 129 (3d. Cir. 1991).  A claimant's subjective allegations of pain or other symptomology cannot establish disability.  42 U.S.C. § 423(d)(5)(A); 20 CFR 416.929(a).

Deferring, as we must, to the legal standard set forth in the previous paragraph, the Court concludes that the ALJ's decision to only partially credit Plaintiff's subjective complaints was well within her authority as the fact finder in this matter.  The absence of objective test results to support Plaintiff's subjective complaints, combined with the utter lack of any medical opinion quantifying the extent to which Plaintiff's physical conditions limit her ability to work, provide ample support for the ALJ's conclusion on this issue.  Here again, the ALJ's conclusion is supported by a quantum of evidence that a reasonable mind might accept as adequate to support a conclusion.  More than that is not required.  See Richardson and Cotter, supra.

23

### V.    Conclusion.

For all the reasons expressed above, the Commissioner's decision denying SSI benefits in this case must be affirmed. An Order consistent with this determination will be filed contemporaneously herewith.


BY THE COURT

                                    S/Richard P. Conaboy
                                    Honorable Richard P. Conaboy
                                    United States District Court

Dated: June 8, 2015

24